570 P.2d 36

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Lonnie DURAN, Defendant-Appellant.**

**No. 2900.**

Court of Appeals of New Mexico.

Aug. 9, 1977.

Rehearing Denied Aug. 22, 1977.

Writ of Certiorari Denied Sept. 22, 1977.

See also, 570 P.2d 39.

Jan A. Hartke, Chief Public Defender, Reginald J. Storment, Appellate Defender, Santa Fe, for defendant-appellant.

Toney Anaya, Atty. Gen., Don Montoya, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION

WOOD, Chief Judge.

Convicted of three armed robberies, defendant appeals. The issues concern: (1) denial of fees for expert witnesses; and (2) relevancy of a question asked on direct examination.

*Denial of Fees for Expert Witnesses*

Prior to trial, defendant moved that he be granted district court funds "to retain the services of a licensed polygraphist to conduct a polygraph examination and testify at the jury trial". This motion was granted with the notation: "but public defender pays". Thereafter an amended motion was filed which asserted "[t]hat the State Court Administrator is budgeted for expert witnesses, and this Court cannot escape this issue by blanket refusals to appoint *ANY* expert witnesses in criminal cases." The trial court's order on the amended motion reads:

> "IT IS THEREFORE ORDERED that the Defendant's Motion for a Polygraph Expert Witness is granted for the purpose of allowing the Defendant to present evidence at the time of trial.
>
> "IT IS FURTHER ORDERED that the District Court will not pay for such examination for the reason that the line item in the budget for expert witnesses for indigent defendants has been exhausted."

Prior to trial, defendant moved that the court appoint a psychology professor as an expert witness to assist the defense by evaluating "eye witness identification testimony by prosecution witnesses." The motion asserts "[t]hat Public Defender Department is funded for attorney fees only, not for psychiatric or other professional services." The motion also asserts: "The court Administrator of each Judicial District is funded for these items". This motion was also granted with the notation "but public defender pays". Defendant's motion for a new trial asserts that the motion to appoint the professor as an expert witness was denied; however, the only showing in the district court file is that the motion was granted with the reservation that the public defender should pay the witness.

The briefs argue an insufficient showing of a necessity for expending public money to employ either the polygraph examiner or the professor. See *State v. Carrillo,* 88 N.M. 236, 539 P.2d 626 (Ct.App.1975). This is a false issue. The trial court granted both motions. The exchange between counsel and the trial court at the close of the State's case-in-chief shows that the trial court's rulings were not based on any question of necessity to use the experts; the rulings were that defendant could utilize the experts, but the experts would not be paid from district court funds.

Defendant claims the trial court's refusal to pay for the experts, solely because the district court budget for this expense had been exhausted, had the effect of denying defendant the use of the experts. The result, according to defendant, was that he was denied various constitutional rights.

Section 41–22–3, N.M.S.A. 1953 (2d Repl.Vol. 6) provides that an indigent is to be provided with necessary services "including investigation and other preparation." These services are to be provided at public expense. Section 41–22–8(A)(2), N.M.S.A. 1953 (2d Repl.Vol. 6) provides that expenses under the Indigent Defense Act are to be paid from "funds appropriated to the district court with respect to all stages of proceedings initiated in the district court." This language does not prevent the Legislature from appropriating additional funds for expenses in indigent cases.

Defendant's contention is that the district court was obligated to pay for the services of the two experts even though district court funds for expert witnesses were exhausted. We do not decide this contention because there is no showing that appropriated funds for these expenses were not available.

The motions seeking public funds to pay expert witnesses were filed in December, 1976. This was during the sixty-fifth fiscal year. The appropriation act for the fiscal year, Laws 1976, Special Session, ch. 58, § 4 at page 426, appropriates $710,000.00 to the Administrative Office of the Courts for "[r]eporting, recording, jury and witness fees for district and magistrate courts". This language could be construed to include the expense of expert witness fees in the district courts. There is no showing in this record that this language did not include

fees for expert witnesses in the district courts.

Section 4 of the appropriation act, cited above, at page 434, appropriates $1,500,-000.00 to the public defender for "[s]alaries and expenses". Defendant's motion fur use of the psychology professor asserts that the public defender was not funded for "professional services", but this contention is not supported by the appellate record. There is no showing, either in the district court file or the transcript, that the appropriation to the public defender for "expenses" did not include fees for the experts that the public defender wished to employ.

There is no showing, and no attempt to show, that either of the above two appropriations had been exhausted when defendant's motions were considered by the trial court.

Although the trial court ruled that its budget for witness fees had been exhausted, it did not rule that public funds were unavailable to pay the expert witnesses. That issue was never raised in the trial court.

■ The State did not deny defendant the use of expert witnesses absent a showing that public funds were unavailable to pay the experts. Since the trial court granted both motions and, since defendant made no showing that funds were unavailable from two appropriations bearing on the subject, there is no showing that defendant's constitutional rights were violated.

■ Defendant's contention, stated above, is that the district court was obligated to pay for the services of the two experts even though district court funds for expert witnesses were exhausted. Implicit in this contention is the view that the district court was required to make funds available. This approach ignores the allegation in the motions that the court administrator had funds with which to pay expert witness fees. When the trial court ruled that its budget for these expenses was exhausted, it was defendant's obligation, as the movant for expenditure of public funds, to show that funds appropriated to the court administrator were not available. The district court was not obligated to affirmatively initiate requests for payment from court administrator funds on defendant's behalf.

*Relevancy*

■ During the direct examination of defendant, his counsel asked: "Did you ask me to request for you, funds to take a polygraph examination to show this jury or anyone else that you were innocent of this crime?" Objection to this question was sustained. Defendant asserts this was error because asking counsel to arrange a polygraph examination bears directly on the credibility of defendant's denial of the charges. We disagree.

The question asked went to a polygraph test to show innocence. As asked, the question jumps from a desire to take a polygraph test to a test result favorable to defendant. This jump omits matters of fact upon which the relevancy of the question depends. Those matters of fact, conditions for relevancy, are (a) actually taking the test, (b) a validly conducted test, and (c) a meaningful test result. See Advisory Committee's Notes to Evidence Rule 401.

■ In *State v. Bell,* 90 N.M. 134, 560 P.2d 925 (1977), the defendant had taken a polygraph examination but the results of the test were inconclusive. Such a result "did not prove that defendant's truthfulness was more likely or less likely . . . The results proved nothing". Nor does defendant's *desire* to take a polygraph test tend to make it more probable or less probable that defendant was the armed robber. See Evidence Rule 401. Until a valid test was performed and there was a meaningful result, evidence of defendant's desire was no more than self-serving evidence which was properly excluded. *State v. Hunt,* 83 N.M. 753, 497 P.2d 755 (Ct.App.1972) and cases therein cited; see also *State v. Snow,* 84 N.M. 399, 503 P.2d 1177 (Ct.App.1972).

The judgment and sentences are affirmed.

IT IS SO ORDERED.

HENDLEY and HERNANDEZ, JJ., concur.